IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SAUNDRA L. CLARK, ) | |
| ) | No. 15-cv-2501 |
| Claimant, ) | |
| ) | Magistrate Judge Jeffrey T. Gilbert |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, Acting ) | |
| Commissioner of Social Security, ) | |
| ) | |
| Respondent. ) | |

**MEMORANDUM OPINION AND ORDER**

Saundra Clark ("Claimant") seeks review of the final decision of Respondent Carolyn W. Colvin, the Acting Commissioner of Social Security ("the Commissioner"), denying in part Claimant's Disability Insurance Benefits ("DIB") application under Title II of the Social Security Act ("the Act"). Pursuant to 28 U.S.C. § 636(c) and Local Rule 73.1, the parties have consented to the jurisdiction of a United States Magistrate Judge for all proceedings, including entry of final judgment. [ECF No. 8.] Claimant has filed a motion for summary reversal of the Commissioner's decision or remand, and the Commissioner filed a motion for summary judgment under Federal Rule of Civil Procedure 56. [ECF Nos. 16, 27.] For the following reasons, Claimant's motion is granted, and the Commissioner's motion is denied. This matter is remanded to the agency for further proceedings consistent with this Memorandum Opinion and Order.

**I. PROCEDURAL HISTORY**

On May 27, 2010, Claimant filed her DIB application alleging a disability onset date of May 27, 2010, due to major depression disorder, recurrent degenerative joint disease, anxiety, and sleep apnea. (R. 167-69, 187, 196-205.) She also survived breast cancer. (R. 197.) After

an initial denial on March 12, 2012, and a denial on reconsideration on September 11, 2012, Claimant filed a request for an administrative hearing before an Administrative Law Judge ("ALJ") on December 28, 2012. (R. 115-16, 130-31.) Claimant, represented by counsel, appeared and testified at the hearing, which took place on September 3, 2013. (R. 35-114.) A Vocational Expert ("the VE") was also present and also offered testimony. (*Id.*)

On September 27, 2013, the ALJ issued a written decision partially denying Claimant's application. As an initial matter, the ALJ found that Claimant met the insured status requirement of the Act through December 31, 2013. (R. 16.) The ALJ found that Claimant was disabled within the meaning of the Act from July 20, 2009, through October 12, 2011, but that since October 13, 2011, Claimant has demonstrated medical improvement relating to her ability to work. (R. 9-30.) At step one, the ALJ determined that Claimant has not engaged in Substantial Gainful Activity ("SGA") since July 20, 2009. (*Id.*) At step two, the ALJ found that Claimant had the severe impairments of osteoarthritis, obesity, breast cancer status post lumpectomy, and major depressive disorder. (*Id.*) At step three, the ALJ found that Claimant did not have an impairment or combination of impairments that meet or medically equals the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, App'x 1. (R. 19.)

Before step four, the ALJ determined that Claimant has the Residual Functional Capacity ("RFC") to perform sedentary work, can lift and carry 10 pounds occasionally and 10 pounds frequently, can stand or walk about two hours and sit for about six hours in an eight-hour workday, and would require a cane to ambulate. (R. 18.) The ALJ further determined that Claimant would be unable to work at heights, climb ladders, or frequently negotiate stairs. (*Id.*) She could only occasionally crouch, kneel, or crawl and would not be suited to work with intense focus and concentration for extend periods of time. (*Id.*) In so finding, the ALJ found that

Claimant's impairments, particularly her osteoarthritis, obesity, and her breast cancer status post lumpectomy, limited her ability to engage in SGA. (R. 19-20.) The ALJ further determined that Claimant's depression further limited her ability to work. (R. 20.) At step four, the ALJ found that Claimant was unable to perform her past relevant work from July 20, 2009 through October 12, 2011. At step five, the ALJ found that Claimant could not perform any jobs existing in significant numbers in the national economy from July 20, 2009 through October 12, 2011.

However, from October 13, 2011, the ALJ found that Claimant experienced medical improvement and her impairments became non-severe, therefore allowing her to engage in SGA. (R. 21-22.) The ALJ found evidence that indicated Claimant's mental health became stable beginning in June 2011. (R. 24.) The record shows that Claimant returned to work in October 2012 and stopped working again in April 2013. (*Id.*) The ALJ further determined that Claimant had the RFC to perform a full range of sedentary work, can carry and lift 10 pounds occasionally and frequently, can stand or walk for about two hours and sit for about six hours in an eight-hour workday, but that she would be unable to work at heights, climb ladders, or negotiate stairs, and can only occasionally crouch, kneel, or crawl. (R. 25.) In so finding, the ALJ noted that Claimant's allegations were not wholly credible and that she engaged in many normal activities of daily living. (R. 28.) The ALJ further noted that Claimant experienced periods of "doing well" with medication and therapy. (*Id.*) The ALJ also found that Claimant was non-compliant with her treatment and that the record did not fully support the severity of Claimant's allegations. (R. 28-29.) The ALJ concluded that beginning October 13, 2011, Claimant was no longer disabled and was capable of performing her past relevant work as a case worker. (R. 29-30.)

On January 22, 2015, the Appeals Council denied Claimant's request for review, rendering the ALJ's determination as the Commissioner's final decision. (R. 1-3.)

## II. STANDARD OF REVIEW

A decision by an ALJ becomes the Commissioner's final decision if the Appeals Council ("AC") denies a request for review. *Sims v. Apfel*, 530 U.S. 103, 106-07 (2000). Judicial review of the ALJ's decision is limited to determining whether the decision is supported by substantial evidence in the record and whether the ALJ applied the correct legal standards in reaching his decision. *Nelms v. Astrue*, 553 F.3d 1093, 1097 (7th Cir. 2009).

Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971). A "mere scintilla" of evidence is not enough. *Scott v. Barnhart*, 297 F.3d 589, 593 (7th Cir. 2002). Even when there is adequate evidence in the record to support the decision, however, the findings will not be upheld if the ALJ does not "build an accurate and logical bridge from the evidence to the conclusion." *Berger v. Astrue*, 516 F.3d 539, 544 (7th Cir. 2008). If the Commissioner's decision lacks evidentiary support or adequate discussion of the issues, it cannot stand. *Villano v. Astrue*, 556 F.3d 558, 562 (7th Cir. 2009).

The "findings of the Social Security Commissioner as to any fact if supported by substantial evidence shall be conclusive." 42 U.S.C. § 405(g). Though the standard of review is deferential, a reviewing court must "conduct a critical review of the evidence" before affirming the Commissioner's decision. *Eichstadt v. Astrue*, 534 F.3d 663, 665 (7th Cir. 2008). It may not, however, "displace the ALJ's judgment by reconsidering facts or evidence, or by making independent credibility determinations." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2008); *Jens v. Barnhart*, 347 F.3d 209, 212 (7th Cir. 2003). The reviewing court may enter a judgment "affirming, modifying, or reversing the decision of the [Commissioner], with or without remanding the cause for a rehearing." 42 U.S.C. § 405(g).

### III. ANALYSIS

The essence of Claimant's argument is that substantial evidence does not support the ALJ's finding that her impairments were medically improved as of October 13, 2011. Specifically, Claimant argues that the ALJ failed to discuss Dr. Barbara Samuels's treatment notes, which show an ongoing, severe mental impairment that significantly limits her ability to return to work in any capacity. Pursuant to 20 C.F.R. §§ 404.1594(b)(1), 416.994(b)(1)(i), medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was present at the time of the most recent favorable medical decision that [the claimant] w[as] disabled or continued to be disabled. A determination that there has been a decrease in medical severity must be based on changes (improvement) in the symptoms, signs and/or laboratory findings associated with [the claimant's] impairment(s)." *Mulligan v. Astrue*, 336 F. App'x 571, 577 (7th Cir. 2009). The courts require that an ALJ substantiate his assessment of a claimant's RFC, *see Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009), a process often referred to as "build[ing] an accurate and logical bridge from the evidence to the conclusion." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

While the ALJ considered Claimant's major depressive disorder to be a severe impairment from June 20, 2009 through October 12, 2011, the ALJ found that "beginning October 13, 2011, the severity of the claimant's mental impairment does not meet or medically equal the criteria of listings 12.04…claimant's…depressive disorder does not cause more than minimal limitations in [her] ability to perform basic mental work activities and is, therefore, non-severe." (R. 22.) The ALJ gave several reasons to support that finding. First, the ALJ referenced Dr. Marilyn Aden's treatment notes from 12 visits from November 2011 through July 2013 in which Claimant gave a negative response to such prompts as she "had little interest or

pleasure in doing things" and was not "feeling down, depressed, or hopeless." (R. 511, 514, 517, 520, 523, 527.) The ALJ further noted that during a May 2013 follow-up visit with Dr. Aden, Claimant was noted as being "talkative." (R. 552.) However, the ALJ's treatment of Dr. Aden's notes is precisely the type of cherry-picking of the medical record that the Seventh Circuit repeatedly has forbidden. *See Yurt v. Colvin*, 758 F.3d 850, 859 (7th Cir. 2014); *see also Bates v. Colvin*, 736 F.3d 1093, 1099 (7th Cir. 2013) ("An ALJ cannot rely only on the evidence that supports h[is] opinion.")

A complete reading of Dr. Aden's notes paints a picture of Claimant's unsuccessful attempt to return to work full-time. Claimant reported being off work for over a year due to depression. (R. 521.) On June 27, 2012, Claimant's depression was reportedly improved and it was noted that she would be able to return to work with the installation of a Dragon dictation machine. (R. 524.) However, during her next visit with Dr. Aden, Claimant reported that she was unable to return to work despite having the dictation machine set up at her work station. (R. 527.) On November 27, 2012, Dr. Aden noted that Claimant was given a day off work but slept for two whole days. (R. 539.) Claimant continued with her follow-up appointments and on February 11, 2013, after reporting that she was stressed out because she was overworked and did not get along with her supervisor, Dr. Aden noted that Claimant may be suffering from bipolar disorder that was never treated. (R. 546-47.) Dr. Aden also opined that Claimant should have "better mood meds" and that though Claimant had regular psychiatric appointments, there was "not much improvement." (R. 553.)

What the ALJ failed to recognize is that, in every instance in which the ALJ noted Claimant was not feeling down or hopeless and did not lose interest in her hobbies, Claimant also was continually reporting the difficulties she faced while attempting to return to work.

6

Many mental illnesses are characterized by "good days and bad days," rapid fluctuations in mood, or recurrent cycles of waxing and waning symptoms. *See Phillips v. Astrue*, 413 F. App'x 878, 886 (7th Cir. 2010) *citing Spiva v. Astrue*, 628 F.3d 346, 351–52 (7th Cir. 2010); *Larson v. Astrue*, 615 F.3d 744, 751 (7th Cir. 2010); *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008); *Kangail v. Barnhart*, 454 F.3d 627, 629 (7th Cir. 2006). Here, the ALJ even acknowledged that Claimant's depression waxed and waned. (R. 22.) However, the ALJ erroneously considered the medical evidence because he stressed only the few hopeful observations and ignored the medical evidence that seemed to favor a disability finding. *See Denton v. Astrue*, 596 F.3d 419, 425 (7th Cir. 2010) *citing Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) (An ALJ has the obligation to consider all relevant medical evidence and cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding.) The ALJ's conclusion that Claimant's depression was no longer severe is not supported by substantial evidence.

Next, the ALJ attempted to support his findings by noting that Claimant was found to be stable on her medication during a November 2011 visit with Dr. Theodore Handrup. But the ALJ did not consider that on March 14, 2012, Dr. Handrup noted that Claimant's depressive symptoms were increasing, as was her anxiety. (R. 484.) Dr. Handrup also noted that Claimant fears "going back to work to a new depressed state," has been crying a lot, and is no longer sleeping well. (*Id.*) The ALJ also referenced the treatment notes of five visits with Dr. Handrup that show Claimant's mental status was "appropriate." (R. 23.) The ALJ also noted that during these visits, Claimant was found to be cooperative, made good eye contact, had normal motor behavior, had regular speech, had a goal-directed thought process, and had an affect that was congruent to her mood. (R. 23.)

That Claimant's evaluation returned some normal results does not mean that she is capable of performing work in a full-time capacity. As indicated by the treatment notes that the ALJ neglected, Claimant's attempts to return to work have not been successful. Moreover, "a person who has a chronic disease, whether physical or psychiatric, and is under continuous treatment for it with heavy drugs, is likely to have better days and worse days." *Bauer v. Astrue*, 532 F.3d 606, 609 (7th Cir. 2008). This is certainly the case for Claimant. "Suppose that half the time she is well enough that she could work, and half the time she is not. Then she could not hold down a full-time job." *Bauer*, 532 F.3d at 609.

The ALJ also noted that Dr. Handrup wrote that Claimant was "psychologically stable to return to work" on October 12, 2011. (R. 23.) The ALJ found no other contradictory psychiatric opinions in the record. (*Id.*) A review of the treatment notes of Claimant's therapist Barbara Samuels, however, shows that Ms. Samuels continually questioned Claimant's ability to return to work. Ms. Samuels has provided therapy to Claimant since November 2009. (R. 672.) Beginning November 2011, when Claimant expressed a desire to return to work, Ms. Samuels was not confident that Claimant would be able to deal with the ongoing stress. (R. 719, 723.) In fact, Ms. Samuels noted that while she understands Claimant's desire to return to work, "she shouldn't go back if she is not well, or not sleeping, or having migraines, or bad knees, or any other serious problem that will keep her away from work or from doing well." (R. 729.)

As Claimant correctly argues, the ALJ completely ignored Ms. Samuel's treatment notes. The Commissioner responds by arguing that the ALJ did not err because Ms. Samuel's was not a medical source and her notes do not support Claimant's argument that she has a mental limitation. However, this argument fails. Though social workers are not considered acceptable medical sources, their opinions are relevant as additional evidence. *See* 20 C.F.R. § 416.913(a)

& (e); *Baran v. Chater*, 99 F.3d 1142 (7th Cir. 1996). "Other professionals, including social workers, can provide information to show the severity of the impairment and how it affects the claimant's functioning." 20 C.F.R. § 416.913(d); *Duncan v. Apfel*, 248 F.3d 1157 (7th Cir. 2000) (unpublished opinion). An ALJ's decision must take "account of the other medical evidence in the record," especially the evidence supplied by the professionals who treated and examined Claimant. *Groves v. Apfel*, 148 F.3d 809, 811 (7th Cir. 1998). Because the ALJ did not do that here, he has not built an accurate and logical bridge between the evidence and result. *See Getch v. Astru*e, 539 F.3d 473, 480 (7th Cir. 2008) (But an ALJ need not mention every piece of evidence, so long as he builds a logical bridge from the evidence to his conclusion.)

Claimant further argues that the ALJ's failure to consider her mental impairment renders the RFC determination deficient. After the ALJ determined that Claimant experienced medical improvement as of October 13, 2011, he determined that she had the RFC to perform a full range of sedentary work with certain physical limitations. (R. 25.) The ALJ did not factor in any mental limitations, presumably because he thought that it was not necessary since he determined her mental impairments to be non-severe. Here, the ALJ failed because when determining a claimant's RFC, "the ALJ must consider the combination of all limitations on the ability to work, including those that do not individually rise to the level of a severe impairment." *See Denton v. Astrue*, 596 F.3d 419, 423 (7th Cir. 2010) *citing* 20 C.F.R. § 404.1523; *see also Terry v. Astrue*, 580 F.3d 471, 477 (7th Cir. 2009); *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009).

A failure to fully consider the impact of non-severe impairments requires reversal. *See Golembiewski v. Barnhart*, 322 F.3d 912, 918 (7th Cir. 2003). Regardless of whether the ALJ believed Claimant's mental impairments were severe or non-severe, he should have considered her depression when crafting the RFC. As stated previously, treatment notes from Dr. Aden and

Ms. Samuels indicate that Claimant was still dealing with major depression and its symptoms. As noted previously, Claimant's various treating physicians noted that she suffered from a lack of energy, difficulty sleeping, crying spells, irritability, and trouble controlling her anger—all symptoms that certainly would bear on her ability to work. *See Richards v. Astrue*, 370 F. App'x 727, 731 (7th Cir. 2010). And yet, a reasonable reading of the ALJ's decision indicates that the ALJ assigned a rating of "mild" in each of the areas of daily living, social functioning, and concentration, persistence, and pace, without any medical professional having rated Claimant's limitations in each of these categories. In fact, a Psychiatric Review Technique Form signed by Dr. David Voss was largely incomplete, and the sections pertaining to the above areas are blank. (R. 458-71.) In the absence of any expert foundation for these ratings, the court cannot discern the necessary logical bridge from the evidence to the ALJ's conclusions. *See Richards*, 370 F.App'x 727 at 731.

For all of these reasons, the ALJ's decision is not supported by substantial evidence and remand is required so that the ALJ can review all of the medical record and then explain his decision.

## IV. CONCLUSION

For the foregoing reasons, Claimant's motion is granted and the Commissioner's motion is denied. This matter is remanded to the agency for further proceedings consistent with this Opinion.

It is so ordered.

_____
Jeffrey T. Gilbert
United States Magistrate Judge

Dated: November 2, 2016